# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

PHILLIP JOSEPH SWIFT, also known as
PHILLIP JOSEPH SWIFT, JR.,

        Defendant-Appellant.

UNPUBLISHED
February 19, 2015

No. 318680
Wayne Circuit Court
LC No. 13-005130-FC

Before: MURRAY, P.J., and HOEKSTRA and WILDER, JJ.

PER CURIAM.

Defendant appeals as of right his jury trial convictions of unarmed robbery, MCL 750.530, and first-degree home invasion, MCL 750.110a(2). Defendant was sentenced as a habitual offender, third offense, MCL 769.11, to 12 to 30 years' imprisonment for the unarmed robbery conviction and 12 to 40 years' imprisonment for the first-degree home invasion conviction. Because defendant is not entitled to resentencing and the trial court's evidentiary decisions did not deny him the right to present a defense, we affirm.

Defendant first argues that the prosecution did not provide him with proper notice under MCL 769.13 of its intent to seek a third habitual offender sentence enhancement under MCL 769.11. Whether the prosecutor fulfilled the statutory requirements of the habitual offender statute, MCL 769.13, poses a question of law which we review de novo. See *People v Hornsby*, 251 Mich App 462, 469; 650 NW2d 700 (2002). In relevant part, MCL 769.13 provides:

> (1) In a criminal action, the prosecuting attorney may seek to enhance the sentence of the defendant as provided under [MCL 769.10, MCL 769.11, or MCL 769.12], by filing a written notice of his or her intent to do so within 21 days after the defendant's arraignment on the information charging the underlying offense or, if arraignment is waived, within 21 days after the filing of the information charging the underlying offense.

> (2) A notice of intent to seek an enhanced sentence filed under subsection (1) shall list the prior conviction or convictions that will or may be relied upon for purposes of sentence enhancement. The notice shall be filed with the court and served upon the defendant or his or her attorney within the time provided in subsection (1). The notice may be personally served upon the defendant or his or

-1-

her attorney at the arraignment on the information charging the underlying offense, or may be served in the manner provided by law or court rule for service of written pleadings. The prosecuting attorney shall file a written proof of service with the clerk of the court.

The purpose of this notice requirement "is to provide the accused with notice, at an early stage in the proceedings, of the potential consequences should the accused be convicted of the underlying offense." *People v Morales*, 240 Mich App 571, 582; 618 NW2d 10 (2000), quoting *People v Shelton*, 412 Mich 565, 569; 315 NW2d 537 (1982). MCL 769.13 has been described as a "bright-line test" which must be strictly applied, such that the prosecution's failure to provide timely notice precludes a sentencing enhancement. *Morales*, 240 Mich App at 574-575. See also MCR 6.112(F) and (G). However, if the prosecution merely fails to file proof of service, this failure constitutes harmless error if the defendant did in fact have notice of the prosecution's intent to seek sentence enhancement, and the failure to file proof of service did not prejudice the defendant's ability to respond to the habitual offender notification. *People v Walker*, 234 Mich App 299, 314; 593 NW2d 673 (1999).

In this case, defendant was arraigned in circuit court on the felony information on June 13, 2013, meaning that the prosecutor's deadline to file notice in compliance with MCL 769.13 was 21 days from that date. See *People v Williams*, 462 Mich 882; 617 NW2d 330 (2000). Relevant to this obligation, the felony warrant and felony complaint, both filed in the district court on May 24, 2013, before defendant's arraignment, contained a written notice of the prosecution's intent to seek a sentence enhancement, and this written notice included a listing of defendant's prior convictions on which the prosecution intended to rely in seeking sentencing enhancement. Written notice was also provided in an unsigned copy of the felony information dated May 24, 2013.[1] In short, the prosecutor fulfilled its obligation to provide written notice within 21 days of defendant's arraignment as required by MCL 769.13(1).

On appeal, defendant acknowledges that several documents contained written notice of the prosecutor's intent to seek a sentencing enhancement, but he alleges that resentencing is nonetheless required because these documents were not filed in the circuit court and there is no proof that he had personal service of this notice at his arraignment or otherwise. We disagree.

Considering first the prosecutor's obligation to file written notice with the court, we are persuaded that the prosecution fulfilled its obligation under MCR 769.13(2). Specifically, written notice was, as noted, contained in the felony information, warrant, and complaint, which were all dated May 24, 2013. Consistent with the notice provided by these documents, the lower court register of actions contains an entry on May 24, 2013 stating: "Habitual Offender." Further, after defendant's arraignment on the warrant in district court, as evidenced by the "bind-over packet" filed in circuit court on June 10, 2013, the warrant, complaint, and felony information, along with other district court documents, were then forwarded to the circuit court

---

[1] The prosecution also later filed a signed, amended felony information on September 3, 2013, before defendant was sentenced, which contained the same third habitual offender notice.

-2-

on June 10, 2013 and they appear in the circuit court record. Thus, as required by MCL 769.13(2), written notice was filed in the circuit court.

Regarding defendant's personal service of notice, as noted, defendant was arraigned on the felony information on June 13, 2013, and, pursuant to MCR 6.113(B), the prosecutor was required to give defendant a copy of the information, which in this case included the habitual offender notice. Defendant waived a formal reading of the information at his arraignment as permitted by MCR 6.113(B), but it does not follow that he was denied an opportunity to review the felony information. See generally *People v Henry (After Remand)*, 305 Mich App 127, 159; 854 NW2d 114 (2014). And, it is nevertheless true that defendant had notice of the charges against him, including the habitual offender enhancement, because this information was contained in the felony information, warrant, and complaint, to which defendant had access. See *People v Nix*, 301 Mich App 195, 208; 836 NW2d 224 (2013); *People v Waclawski*, 286 Mich App 634, 707; 780 NW2d 321 (2009). In these circumstances, defendant may not now claim ignorance of the sentencing enhancement, see *Nix*, 301 Mich App at 208; and, indeed defendant does not attempt to deny that he did in fact have actual knowledge of the prosecutor's intent as expressed in the warrant, complaint, and felony information.

At most, fairly read, defendant's claim on appeal amounts to the assertion that there was no proof of service in the lower court record as required by MCL 769.13(2). But, any oversight in this regard constituted harmless error because defendant had notice of the prosecution's intent to seek an enhanced sentence under the habitual offender statute and the prosecution's actions did not prejudice defendant's ability to respond to the habitual offender notice. See *Walker*, 234 Mich App at 314-315. Specifically, notice was provided to defendant in the documents detailed above, and when the prosecutor noted at sentencing that defendant was a third habitual offender, neither defendant nor defendant's attorney challenged the prosecutor's assertion or claimed a lack of notice. Based on defendant's criminal history, the trial court also concluded during sentencing that defendant was a third habitual offender. Defendant did not challenge the trial court's findings in this regard, and he does not argue on appeal that he had any viable challenge to the habitual offender enhancement. On these facts, the prosecution's failure to file a proof of service constituted harmless error. Defendant is not entitled to resentencing.

Defendant next argues that the trial court abused its discretion when the trial court ruled that the testimony of defendant's girlfriend, Samantha Long, regarding her discussions with Internal Affairs for the Detroit Police Department was irrelevant. Defendant maintains that the excluded testimony was necessary to rehabilitate Long's credibility, and that the exclusion of this evidence denied him the right to present a defense.

This Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *People v King*, 297 Mich App 465, 472; 824 NW2d 258 (2012). In addition, this Court reviews for an abuse of discretion a trial court's decision regarding the proper scope of redirect examination. See *People v Stevens*, 230 Mich App 502, 507; 584 NW2d 369 (1998); MRE 611. "The trial court abuses its discretion when its decision is outside the range of principled outcomes." *King*, 297 Mich App at 472. "A preserved trial error in admitting or excluding evidence is not grounds for reversal unless, after an examination of the entire cause, it affirmatively appears that it is more probable than not that the error was outcome determinative." *Id*.

In general, all relevant evidence is admissible at trial, and a criminal defendant has a right to "put before a jury evidence that might influence the determination of guilt." *People v Powell*, 303 Mich App 271, 277, 279; 842 NW2d 538 (2013) (citations omitted). In contrast, irrelevant evidence is inadmissible at trial. *Id.* at 277. See also MRE 402. Evidence is relevant if it "has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.' " *Powell*, 303 Mich App at 277, quoting MRE 401. "Evidence is 'admissible if it is helpful in throwing light on any material point.' " *Id.* (citation omitted). A fact is material if " 'it is within the range of litigated matters in controversy.' " *Id.* (citation omitted).

At trial, the victim in this case testified that a couple weeks before May 16, 2013, at Long's request, he and a friend helped Long dispose of several items in the home Long shared with defendant, including a stove, refrigerator, and metal coat racks, which they took to a scrap yard. It was the prosecution's theory that defendant subsequently went to the victim's home with an accomplice on May 16, 2013 and attacked the victim because defendant was angry that items had been removed from the home. At trial, Long denied asking for the victim's assistance and she maintained that the items taken from the home had been stolen by the victim in November 2012. In support, she claimed that she called police on November 6, 2012 to report a robbery and that, on that date, she and a police officer caught the victim and two other individuals robbing her home. Long's testimony in this regard was suspect because, although a police report was filed on November 7, 2012, in contrast to Long's testimony, the police report indicated that the house which had been robbed was unoccupied and that there were no suspects in the purported robbery.

Relevant to this line of testimony, the prosecutor questioned Long on cross-examination regarding the contents of several reports that Long made to the police, including additional police reports filed against the victim after defendant's arrest for the present offenses. Defense counsel then asked Long during redirect examination whether Long had made contact with anyone in the Detroit Police Department other than the persons with whom Long talked to on the telephone while filing the reports. Long replied that she had contacted Internal Affairs. The prosecutor objected to the relevancy of Long's contact with Internal Affairs. In response, defendant maintained that Long's contact with internal affairs would support the assertion that Long did not contact the police solely because defendant had gotten into trouble and that the possibility that a police officer had been involved with the November 2012 robbery would explain why police had not made progress on the investigation. After hearing arguments from both parties, the trial court determined the internal affairs line of questioning was irrelevant and it sustained the prosecutor's objection.

On the record presented, we conclude that the trial court did not abuse its discretion in ruling that Long's testimony regarding the Internal Affairs reports was irrelevant. As the prosecutor noted at trial, defense counsel did not seek to admit the contents of the Internal Affairs report into evidence. Instead, defense counsel intended to question Long regarding the Internal Affairs report in order to point out that Long had made several attempts to contact the police and that the police were reluctant to investigate her robbery report. However, the fact that Long had contacted Internal Affairs, and the fact that the police may have been reluctant to investigate the November 2012 robbery, would not have explained the pertinent discrepancies between Long's testimony and the contents of the police reports, meaning this line of

questioning would not have aided her credibility.  Because this testimony did not impact Long's credibility or any other material fact at trial, the trial court did not abuse its discretion in ruling that Long's testimony regarding the Internal Affairs report was irrelevant.

Furthermore, even if the trial court did abuse its discretion in ruling that Long's testimony regarding the Internal Affairs report was irrelevant, the error was not outcome determinative.  According to defendant, the error was outcome determinative because defense counsel was unable to bolster Long's credibility and she was an important alibi witness.  However, as discussed, the testimony would not have aided Long's credibility because Long's contact with Internal Affairs does not explain the discrepancy between Long's testimony and the facts she reported to police, and it was these discrepancies which cast doubt on her credibility as a witness.  Furthermore, the exclusion of evidence regarding Long's contact with Internal Affairs did not prevent defendant from arguing that the victim stole items from his house, and it did not prevent defendant from presenting an alibi defense.  Indeed, the fact that the police may have been unresponsive to Long's robbery claim has no bearing on the ultimate issue of whether defendant committed the crimes for which he was charged.  Therefore, it does not affirmatively appear that the trial court's decision to exclude discussion of the Internal Affairs report was outcome determinative and defendant is not entitled to relief.

Affirmed.


/s/ Christopher M. Murray
/s/ Joel P. Hoekstra
/s/ Kurtis T. Wilder